AURELIO PAPA and DAVID DOTTA, Appellants, *v.* THELMA VACCHINA and THYRA SAVAGE, Respondents.

No. 4028

February 6, 1958.　　　　　　321 P.2d 245.

(Rehearing denied March 5, 1958.)

*Orville R. Wilson* and *Milton J. Reinhart,* of Elko, for Appellants.

*Springmeyer and Thompson,* of Reno, for Respondents.

**OPINION**

By the Court, MERRILL, J.:

This is a suit for foreclosure of a lien upon real property located in the City of Elko, Nevada, brought by respondents as plaintiffs. Appellants as mortgagees claim an interest in the property adverse to respondents. The issue is as to the priority of the respective interests. The trial court held respondents to have priority. From judgment to this effect the appeal is taken.

Respondents' lien is founded upon a written agreement between W. M. Weathers and Eva Weathers, his wife, dated October 22, 1947. The agreement recites the parties' ownership in joint tenancy of the real property here involved and provides:

"The husband promises and agrees that in the event the wife should predecease him and he become the survivor of the said joint tenancy in and to the above described property, he will pay to Thelma Vacchina and

Thyra Savage, daughters of the said wife, each, the sum of $3,500 as soon after the death of the said wife as he is able to reduce the said property to cash.

"It is particularly agreed to and understood that in the event the husband predeceases the said wife and the said wife becomes the survivor of the said joint tenancy, then this agreement shall terminate and be of no further force and effect.

"The husband agrees that in the event he becomes the survivor of the said joint tenancy, that the payments herein provided for to be paid by him shall be a lien against the said premises, and binding upon his heirs, executors, administrators and assigns."

Mrs. Weathers died October 11, 1952 and later that month the agreement was recorded in the office of the county recorder of Elko County under "Miscellaneous Records." In February, 1953 the district court of Elko County by order terminated the joint tenancy and confirmed title in W. M. Weathers as survivor. Subsequently Weathers executed in favor of appellants the mortgages upon which they now rely.

The trial court held respondents to have a valid lien against the property in question with a priority of October, 1952. Upon five separate grounds appellants assert error and contend that respondents' lien is ineffectual as against them.

First: Appellants contend that the agreement upon which respondents' lien is founded constitutes a testamentary disposition of property and, since it lacks the formal requisites of a will, is void. Two elements of a testamentary disposition are lacking, however. The agreement is not ambulatory. It was a simple contract supported by consideration on both sides. That the husband should survive his wife was merely a condition precedent to his duty to discharge his obligation. He possessed no right to unilateral revocation of the agreement. Furthermore the vesting of enforceable rights was not postponed until the death of the obligor, Mr. Weathers. The event which was the condition precedent to his obligation to perform was not his death, but that of his

wife. "If the instrument creates a right in the promisee before the death of the testator, it is a contract." In Re Howe's Estate, 31 Cal.2d 395, 189 P.2d 5, 7, 1 A.L.R.2d 1171. The conditional obligation became irrevocably binding upon Mr. Weathers during his lifetime and was not limited in its operation to property which he might leave on his death. The agreement, then, was not testamentary in character.

Second: Appellant contends that the agreement placed a burden upon the estate of the survivor and that this resulted in so changing the nature of his estate that the joint tenancy was destroyed and converted into a tenancy in common. This contention is vigorously opposed by respondents. We make no determination upon the issue, however. Such a determination could have no effect upon the rights of the parties to this appeal as between themselves. Whether Weathers' estate at the time of his wife's death was that of a surviving joint tenant or was the undivided one half interest of a tenant in common, the question of priorities remains, since all interested parties claim through Weathers, whatever his estate may have been. Appellants, then, are not aggrieved by any asserted error in this respect.

Third: Appellants contend that the recording and indexing of the agreement under "Miscellaneous Records" was insufficient to give them notice of the claim of lien. To constitute proper recording, they claim, it should have been recorded and indexed in the book and index provided to meet the requirements of NRS 247.-120, 1(a): "Deeds, grants, transfers and mortgages of real estate."

The instrument is not entitled "mortgage" and is not in the usual form of mortgage instruments. It bears no entitlement and describes itself simply as an "agreement." It cannot be said that its nature in the creation of "a lien against the premises" is so clearly that of a mortgage as to require its recordation in that manner.

Courts should not be overtechnical in these matters where the instrument is complex or otherwise difficult to classify. Where the character of the instrument is not readily apparent the rights of the parties to it should not be made to depend upon the ability of the recorder to determine its true character. Stanislaus Water Co. v. Bachman, 152 Cal. 716, 93 P. 858, 15 L.R.A.(N.S.) 359.

Stephen v. Patterson, 21 Ariz. 308, 188 P. 131, 132, dealt with a written agreement to pay $1,250 out of the first $5,000 received from sale of certain property. It provided, "a special lien is hereby created on said property to secure payment of this obligation." It was recorded in the book entitled, "Miscellaneous." The court held such recording to be proper, stating, "It is not in the usual or ordinary form of a mortgage. Only such instruments as are mortgages by their express terms are required to be recorded in separate books, denominated 'Mortgages of Real Property.' "

We conclude that the recording of the agreement in "Miscellaneous Records" was proper.

Fourth: Respondents contend that in any event they are entitled to priority upon certain sums advanced by them for taxes, fire insurance premiums and plumbing service which advances were for the purpose of preservation of the estate.

In the action below, however, recovery of these sums was not sought upon this basis. It was not contended that they were entitled to an independent priority upon the theory of preservation of the estate. It was alleged by appellants that these sums were advanced by them under the terms of their mortgages to the effect that such mortgage should be security for all moneys becoming due from the mortgagor to them from any cause. The advances were so treated by the trial court. They were given the same priority as the original mortgage debt, in complete accordance with the appellants' contention. Appellants will not now be heard for the first time to

contend that the trial court erred in adopting the theory of recovery which they themselves had urged upon the court.

'Finally appellants contend that respondents should be barred by laches from asserting their lien rights. We fail to see how prompter action would have affected appellants' rights unless suit had been brought prior to the date of their mortgages and their attention had in this manner been directed to respondents' claims. However there certainly was no occasion for respondents to resort to foreclosure upon their security until it had become apparent that Weathers did not propose to comply with his obligation "as soon as he is able to reduce said property to cash." There is nothing in the record to indicate that earlier action should have been taken. Accordingly we feel that there is no merit in this contention.

Affirmed.

BADT, C. J., and EATHER, J., concur.